IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JOHN LIOCES, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: 7:25-CV-00009 (WLS) |
| | : | |
| AG-PRO, LLC and | : | |
| AG-PRO OHIO, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the court is Plaintiff John Lioces's ("Plaintiff Lioces") Unopposed Motion for Conditional Certification (Doc. 44) ("the Motion"). For the reasons discussed below, the Motion is **GRANTED**.

### I.   RELEVANT PROCEDURAL HISTORY

This is a Fair Labor Standards Act ("FLSA") case against Defendants Ag-Pro Companies, LLC and Ag-Pro Ohio, LLC ("Defendants") (Doc. 27 ¶ 6–7). Ag-Pro Companies, LLC holds its principal place of business in Boston, Georgia, as does Ag-Pro Ohio, LLC, WHICH IS an affiliate of the former. *Id.* Plaintiff, a former employee of Defendant Ag-Pro Ohio, LLC, filed the Complaint (Doc. 1) on January 13, 2025, and amended his complaint on April 17, 2025. (Doc. 27). An amended complaint supersedes the original complaint, so the Court will only discuss the amended complaint. *See e.g.*, *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006). Therein, Plaintiff Lioces alleges that Defendants violated the FLSA by wrongfully classifying Plaintiff and other similarly-situated individuals (salespeople) as exempt from overtime pay. (*Id.* ¶¶ 20–22). Plaintiff Lioces brings a putative FLSA collective action seeking unpaid wages, liquidated damages, and attorneys' fees and costs. (Doc. 27 at 13).

Since the lawsuit was filed, a number of Plaintiffs have opted-in to the lawsuit by filing "Opt-In and Consent Form[s]" on the docket. These Plaintiffs include: Mark Hudson, Tim Thomas, Zachary Williams, Ian Higgins, Lee Barnes, Richard Weekley, Carter Sims, Corey Brown, and George Blizzard. (Docs. 10, 31, 32, 36, 37, 45).

Plaintiff Lioces filed the instant Motion on October 9, 2025, without opposition from Defendants. (Doc. 44).

## II. PROVISIONAL FACTUAL FINDINGS

The following facts are derived from the pleadings, (Docs. 27 & 30), and Plaintiff's Motion for Conditional Certification (Doc. 44). The facts as stated in this Order are not intended, nor should they be construed, as an ultimate finding as to any fact as may be determined at a later stage in the proceeding or at trial.

Defendant Ag-Pro, LLC operates eighty-three Ag-Pro stores in Georgia, Alabama, Florida, Kentucky, Ohio, North Carolina, South Carolina, and Tennessee. (Doc. 27 ¶ 8). Combined, Defendants run the largest chain of John Deere equipment retailers in North America. (*Id.* ¶ 10). Ag-Pro, LLC exercises control over affiliate Ag-Pro stores through Division Presidents, and a shared CEO James Groover. (Doc. 27 ¶ 15, 17; Doc. 30 ¶1 7). From May 15, 2024 to October 2024, Plaintiff John Lioces worked for Defendants as an "inside salespeople [sic]" whose primary job duty was to sell John Deere equipment and machinery from the Norton, Ohio store. (Doc. 27 ¶ 19). According to Plaintiff's complaint, he and the opt-ins "regularly work over 40 hours in a workweek, and often upwards of 60 hours per week." (Doc. 27 ¶ 35). Plaintiff states that because of "long workweeks and low commissions, Defendants' salespeople regularly earn less than one and one-half times the federal minimum wage for all hours worked, and also regularly earn less than half of their wages in bona fide commissions." (Doc. 27 ¶ 36). Therefore, Plaintiff argues, Defendants' salespeople are "routinely ineligible for the overtime exemption in 29 U.S.C. § 207(i)" and, despite this, Defendants misclassify "all salespeople as outright exempt from overtime pay." (Doc. 27 ¶ 38–40).

## III. MOTION FOR CONDITIONAL CERTIFICATION

Plaintiff Lioces moves the Court to conditionally certify the following class: "current and former employees of Defendants who: (a) worked in the position of Equipment Sales, Equipment Sales – Construction Sales, Equipment Sales – Inside Sales, Equipment Sales – Outside Sales, Export Sales, or Internet Sales at any time between the date three years prior to the date the Court issues an order granting conditional certification (the maximum statute of limitations under 29 U.S.C. § 255) and the present; (b) primarily made sales inside one of

2

Defendants' stores; and (c) received commissions and/or incentives that did not comprise more than half of their total pay in any calendar year during the three-year time period."(Doc. 44 at 4). Defendants do not oppose certification of this action as a collective action on a conditional basis only or the issuance of notice as set out in the first footnote[1] of Doc. 44. (*Id.* at 1–2).

### A.   Standard of Review

The FLSA allows employees deprived of wages or overtime compensation to sue their employers for damages on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). "Congress passed the FLSA to protect workers from overbearing practices of employers who had greatly unequal bargaining power over their workers." *Billingsley v. Citi Trends, Inc.* 560 F. App'x 914, 920 (11th Cir. 2014) (citing *Roland Elec. Co. v. Walling*, 326 U.S. 657, 668 n.5 (1946)). Generally, FLSA plaintiffs should be given the opportunity to proceed collectively. *Id.* (citing 29 U.S.C § 216(b) and *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989)). Such a collective action mechanism "(1) reduc[es] the burden on low wage employees through the pooling of resources, and (2) efficiently resolv[es] common issues of law and fact that arise from the same illegal conduct. *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) (citing *Hoffman-La Roche*, 493 U.S. at 170). Unlike a Federal Rule of Civil Procedure 23 class action, a putative FLSA collective action plaintiff must choose to affirmatively join the class by filing his or her written consent to be bound by the judgment. 29 U.S.C. § 216(b); *Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1215 (11th Cir. 2001). A district court may authorize notice to potential opt-in plaintiffs in "appropriate" cases. *Hoffman-La Roche*, 493 U.S. at 169.

In the Eleventh Circuit, courts use a two-part approach to notice and certify an FLSA collective class. *Hipp*, 252 F.3d at 1218 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)). At the first stage, the court should determine whether a class should be "conditionally certified." *Morgan*, 551 F.3d at 1264. At this stage, Plaintiff bears the burden of showing a "reasonable basis" for his claim that there are other similarly situated employees

---

[1] "Defendants expressly reserve all rights, including, but not limited to, their right to seek decertification of the conditionally certified FLSA collective action in its entirety at a later date, their right to seek, restrict, or limit the scope and breadth of membership in such conditionally certified FLSA collective action for any reason, and their right to assert that a two-year statute of limitations should apply to the FLSA collective action rather than a three year statute of limitations, pursuant to 29 U.S.C. § 255."

3

who wish to opt in. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 2007)) (citing *Hipp*, 252 F.3d at 1215). Courts employ a "fairly lenient standard" at this initial stage, *Morgan*, 551 F.3d at 1261, and may make a determination on Plaintiffs' pleadings and the affidavits in the record—provided those pleadings and affidavits provide a "reasonable basis" for that determination. *Id.* at 1262 n.41.

The second stage is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial." *Hipp*, 252 F.3d at 1218. The second stage requires more than 'allegations and affidavits' to maintain certification. *Morgan*, 551 F.3d at 1261 (quoting *Anderson*, 488 F.3d at 953). Rather, the court may consider factors such as "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *See id.* (quoting *Anderson*, 488 F.3d at 953).

    1.    *Similarly Situated Employee Positions*

For plaintiffs to maintain a collective action under § 216(b), they must demonstrate that they are similarly situated. 29 U.S.C. § 216(b). The FLSA's text "does not define how similar the employees must be before the case may proceed as a collective action and this Circuit has not adopted a precise definition of the term." *Morgan*, 551 F.3d at 1259. Even so, the Eleventh Circuit requires that "a district court . . . satisfy itself that there are other employees who desire to opt-in and who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Id.* (citing *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)). There is no requirement, however, that each employee in the putative collective action hold identical positions. *Id.* (citing *Grayson*, 79 F.3d at 1096).

In the absence of clear Circuit guidance after *Morgan*, district courts in this Circuit have adopted various tests to analyze whether employees are similarly situated. *Compare Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 676–77 (S.D. Fla. 2013) *with Page v. I Love Suishi, Inc.*, No. 5:16-cv-01146, 2018 WL 11453813, at *2–3 (N.D. Ala. Aug. 14, 2018). The Court uses the factor-based approach to analyze whether employees are similarly situated that has been consistently employed throughout the Eleventh Circuit. *See e.g., Martin v. Budd Props., Inc.*, No. 7:17-cv-27, 2018 WL 6521475, at *4 (M.D. Ga. April 27, 2018) (citing *Rojas*, 297 F.R.D. at

4

677); *Taylor v. White Oak Pastures, Inc.*, 454 F. Supp. 3d 1317, 1332 (M.D. Ga. 2020) (Gardner, J.) (citing *Whineglass v. Smith*, No. 8:11-cv-2784, 2013 WL 2237841, at *7 (M.D. Fla. May 21, 2013) and *Stone v. First Union Corp.*, 203 F.R.D 532, 542–43 (S.D. Fla. 2001)). Under such an approach, a court considers factors such as:

> (1) whether all plaintiffs held the same job titles;
>
> (2) whether the plaintiffs worked in the same geographic locations;
>
> (3) whether the alleged violations occurred during the same time period;
>
> (4) whether the same policies and practices governed plaintiffs and whether the same decision-maker established these policies and practices in the same manner; and
>
> (5) the extent to which the alleged violations are similar.

*Taylor*, 454 F. Supp. 3d at 1332. These factors are "guideposts[,]" with no single factor being dispositive, and the factors taken as a whole are not necessarily determinative of status as similarly situated employees. *See e.g.*, *Page v. I Love Sushi*, No. 5:17-cv-01146, 2018 WL 1145813, at *3 (N.D. Ala. Aug. 14, 2018) (quoting *Alequin v. Darden Rests., Inc.*, No. 12-61742, 2013 WL 3939374, at *4 (S.D. Fla. July 12, 2013)). The Court finds the factors to be a useful framework in analyzing the proposed class. But, in any event, the Court remains bound to apply such factors under the "fairly lenient" standard prescribed at the initial conditional certification stage which "typically results in conditional certification[.]" *Hipp*, 252 F.3d at 1219 (quoting *Mooney*, 54 F.3d at 1207).

At hand, the present issue before the Court is whether Plaintiff has satisfied his burden of showing a "reasonable basis" for his claim and that there are other similarly situated employees who wish to opt in under the first stage of the two-part test. The Court concludes that conditional certification is warranted because Plaintiff Lioces has shown a reasonable basis for his claim and that there are other similarly situated employees who wish to opt in at this stage.

First, all plaintiffs more or less held the same job titles. Plaintiff seeks to certify a collective of people who held the position of "Equipment Sales, Equipment Sales – Construction Sales, Equipment Sales – Inside Sales, Equipment Sales – Outside Sales, Export Sales, or Internet Sales." (Doc. 44 at 4). All these people held the same job title: Sales. And the

5

positions are presumably functionally similar. Each sold some type of equipment, some in-store, some online. A court would be hard pressed to find a more similarly situated group of plaintiffs. This factor weighs heavily in favor of conditional certification of the collective.

Second, all plaintiffs did not work in the same geographic location. Plaintiff indicates that opt-ins worked in Georgia, Alabama, Florida, Kentucky, North Carolina, South Carolina, and Tennessee. Globally, Plaintiffs worked in a similar geographic location: the American Southeast. But this region is vast. Saying that a Floridian works in the same geographic location as a Kentuckian would render the second factor virtually meaningless, as it would counsel against only bi-coastal collectives. Again, however, no single factor is dispositive.

Third, the alleged violations occurred within the same time period. Plaintiff seeks to certify a class of employees who worked for Defendants "at any time between the date three years prior to the date the Court issues" its Order "and the present." (Doc. 44 at 4). This time period is fairly limited. Considering the FLSA violations alleged took place over long periods of time, and according to Plaintiff's Complaint, were exacerbated after an employee worked for Defendants for several months and reached the point in their tenure at when they no longer received a guaranteed commission[2]. (Doc. 27 ¶ 29–33).

Fourth, Plaintiff asserts that same policies and practices governed plaintiffs and whether the same decision-maker established these policies and practices in the same manner. Plaintiff asserts a sole violative practice: the misclassifying of salespeople as exempt from overtime pay. This factor is consistent throughout the entire class. And Plaintiff asserts that Ag-Pro, LLC supervised salespeople using Division Presidents and "retained the power to determine the pay rates or the methods of payment for Plaintiff and the Opt-Ins." (Doc. 27 ¶ 15). Additionally, Plaintiff alleges Ag-Pro, LLC "promulgated and published the employee handbook" governing Plaintiff and the other opt-ins. (*Id.*) Therefore, the same policies and practices governed plaintiffs and the same decision-maker, Ag-Pro, LLC, established these policies and practices. This factor weighs heavily in favor of conditional certification.

---

[2] Plaintiff's Complaint indicates that salespeople received a guaranteed commission of $1500 for their first handful of months as salespeople working for Defendants. After that point, salespeople earned a commission which reflected their actual sales and, as Plaintiff alleges, almost never surpassed that initial guaranteed commission of $1500. (Doc. 27 ¶ 25–34).

Fifth, the alleged violations are identical. Plaintiff alleges that Defendants misclassified salespeople as exempt from overtime pay and correspondingly underpaid them for time worked over forty hours a week (Doc. 24 ¶ 34–40). This factor weighs in favor of conditional certification.

Plaintiff has established a reasonable basis for his claim and that others are similarly situated. Because at least nine other individuals have already opted in, Plaintiff has demonstrated that others wish to opt in at this stage. (Docs. 10, 31, 32, 36, 37, 45). Plaintiff meets the requirements for conditional certification.

In sum, Plaintiff's Unopposed Motion to Conditionally Certify a Collective Action and to Issue Notice (Doc. 44) is **GRANTED**. The Court **CONDITIONALLY CERTIFIES** the following class: "current and former employees of Defendants who: (a) worked in the position of Equipment Sales, Equipment Sales – Construction Sales, Equipment Sales – Inside Sales, Equipment Sales – Outside Sales, Export Sales, or Internet Sales at any time between the date three years prior to the date the Court issues an order granting conditional certification (the maximum statute of limitations under 29 U.S.C. § 255) and the present; (b) primarily made sales inside one of Defendants' stores; and (c) received commissions and/or incentives that did not comprise more than half of their total pay in any calendar year during the three-year time period."(Doc. 44 at 4). Should the need to expand the class become apparent with the benefit of further discovery, Plaintiffs may move to conditionally certify additional categories of employees, if justified.

**SO ORDERED**, this 22nd day of October 2025.

                                              **/s/ W. Louis Sands**
                                              **W. LOUIS SANDS, SR. JUDGE**
                                              **UNITED STATES DISTRICT COURT**